Good morning. One moment, please. Can I just, counsel, are you Ms. Hagner on the video? Yes. Okay, good. That's why I was going to ask for a thumbs up that you can hear us okay and see us okay. Okay, terrific. And me. Michelle Portillo. Sorry. Ms. Portillo, can you also see okay? Okay, so we're all set to go? All right. Okay. Go right ahead. When we have one person in the courtroom and one person on video, I just want to assure you that we can see you and hear you, but if you have any interruption, please let us know. This usually goes seamlessly. We've had a little bit of trouble, so for government's counsel, if there's any problem, just wave and we'll stop. Go right ahead. Good morning, Your Honors. Michelle Portillo, pro bono counsel for petitioner. Thank you. With the court's permission, I the violence he suffered on three separate occasions at the hands of the Sinaloa cartel, the last of which resulted in the cartel members kidnapping J-O-A and brutally torturing him by beating him, stabbing him, burning him, and shooting him. On each of the three attempts to report the cartel violence to the police, the police refused to issue a written report and refused to protect J-O-A from future torture. Counsel, I'm sorry to interrupt, but there was an adverse credibility finding in this case, right? And are you challenging that adverse credibility finding? No, Your Honor, and that is because the BIA's decision is devoid of any mention of an adverse credibility finding, and for that reason, credibility was presumed throughout the BIA's decision, and its independent factual findings and legal findings reveal that it did not expressly adopt the IJ's decision, and therefore this is a false accusation. The IJ and the BIA erroneously deny J-O-A's petition for relief under asylum, withholding of removal, and CAT. J-O-A's petition for review presents a wide range of serious issues committed by the BIA, three of which are grounds for remand. I will highlight the three and then take them in turn. The BIA's three most serious issues include, one, its improper denial of J-O-A's CAT claim based on a misstatement of the record, and a failure to meet the regulatory requirement to review all evidence in the record, including J-O-A's expert reports and country conditions evidence. Two, BIA's erroneous denial of J-O-A's asylum and withholding of removal application based on a fundamental misinterpretation of this court's precedent in Enriquez-Rivas' Beholder and Conde Guevara-Vibar. And finally, three, an improper assessment of J-O-A's due process claim. The court should review J-O-A's CAT claim and remand in light of the BIA's serious errors. There are quite a few. To qualify for CAT relief, a petitioner must establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. In other words, there is a greater than 50% chance that he will be tortured upon removal to Mexico, and he has met his burden. In determining whether J-O-A has established that he would more likely than not be tortured in Mexico if returned, the BIA was required to evaluate the expert reports and the country conditions evidence. CAT's implementing regulations so require. That's not to say that the BIA must discuss each piece of evidence in the record. If there was nothing in the record or in the BIA's decision indicating a failure to consider all of the evidence before it, a general statement that it had considered all such evidence could suffice. But, as here, when there is an indication that the BIA did not consider all of the evidence before it, a catch-all phrase that it did does not suffice and the decision cannot stand. And this court has held in cold beholder that such indications include misstating the record or failing to mention highly probative or potentially dispositive evidence. Like cold beholder, here there are clear indications that the BIA did not consider all of the evidence before it. As in cold, the BIA ignored credible expert testimony. At AR-5 in the record, the BIA states that respondent argues that the immigration judge failed to consider expert testimony and country conditions evidence. And in the next sentence, the BIA summarily states, we reject each of these contentions. There is no further mention of the expert reports anywhere in the BIA's decision. And under cold, this cannot suffice. The BIA was obliged to state reasons in the record why the testimony was insufficient to establish the probability of future torture necessary to grant cat relief. Importantly, the overlooked testimony substantiates Geoway's claims of past torture. We have at AR-405 to 435 in-court testimony by Ken Lauria, an expert in the psychological effects of Geoway's PTSD. At AR-909 to 916, we have expert report submitted by Ken Lauria substantiating that Geoway was suffering PTSD as a result of the past torture that he had experienced. And finally, and possibly most telling, is at AR-452 to 455, we have an expert report by Dr. Chevret providing that Geoway's prevalent scarring throughout his body was not only consistent with the type of stabbing, burning, and shooting that Geoway suffered, but also that it was, quote, entirely possible that Geoway's wounds healed as they did even without immediate medical attention. The expert testimony of past harm is highly probative as to the BIA's cat assessment as past torture has been held to be highly indicative of the likelihood of future torture. The BIA states that past torture is relevant but not dispositive and simply cites to the statute. But this court has held, has since interpreted that statute to mean that the existence of past torture is ordinarily the principal factor on which this court relies in assessing cat claims. It's central because when an individual has been tortured and has escaped to another country, it's likely that he'll be tortured again if returned unless circumstances have changed significantly as to that particular individual. Here Geoway's evidence of past torture should have been the first factor that the BIA considered in evaluating the likelihood of future torture because past conduct frequently tells us much about how an individual or government will behave in the future. The court should remand to the BIA can provide reasoned consideration to Geoway's evidence of past torture, probative evidence that went to the probability of future torture. Unfortunately, the BIA's errors don't stop there. In addition, the BIA failed to take into account Geoway's evidence of country conditions. As to acquiescence, the BIA applied the incorrect legal standard by failing to take into account highly relevant country conditions evidence in the record in its acquiescence assessment. In its acquiescence assessment in the BIA decision, there is no mention of the country conditions report. This court has granted petitions for review in cat cases where the BIA did not consider country conditions in the record as the acquiescence assessment. That is in Aguilar-Ramos and in Parada v. Sessions, Your Honor. So under Ventura, if we agree with you, we would remand? Is that what you're seeking? That's correct. So not only should the expert report but the country conditions report be taken into account, but in addition, the BIA misstates the record when it states that Geoway has not provided any evidence that the Mexican government was aware of the torture before it occurred. At AR 310 to 313, Your Honors, Geoway reports to the police the second attempt or the second instance that the cartel members beat him on that instance. He reports that incident to the police and the police inform him that there is nothing that they can do and even advise him and let him know that the only thing that he can do is flee the because they will not leave him alone. They knew, they were aware that the torture was bound to happen, that Geoway was not going to be left alone by the cartel and they refused to help him. This is enough to establish acquiescence and the BIA's misstatement of the record is grounds for remand. If there are no questions as to the cat claim, I can move on to the PSG argument. There don't seem to be any more questions as to the cat claim. All right. Simply, the BIA fundamentally misinterprets Enriquez-Rivas and Conde-Cuevero. Enriquez-Rivas clarifies that both the BIA and the Ninth Circuit have consistently held that the kind of group characteristic that falls under this PSG construction remains to be determined on a case-by-case basis and will require an evidence-based showing that the vulnerability of the PSG as a group and as a discrete class of persons. However, the BIA does not conduct an evidence-based inquiry as required by Enriquez-Rivas. Instead, at best, the BIA requires Geoway's position to be identical of that of Enriquez-Rivas and at worst, it boldly imports a publicly testified in a formal proceeding requirement onto the Enriquez-Rivas holding. In Enriquez-Rivas, Judge Baez states that if an applicant can demonstrate as a factual matter that he reasonably fears persecution because some covert action that he has taken may come to the attention of his persecutors, then it's irrelevant whether the action would, as a general matter, not be discovered because of its covert nature. The government's post hoc argument that Geoway's PSG is not cognizable because the police did not take a written report or because Geoway's reporting was not public in nature or not wrong pursuant to Enriquez-Rivas. The BIA also improperly interprets Conde Quiveto-Vibar, a Ninth Circuit decision in 2020 relying on Enriquez-Rivas. Conde Quiveto re-clarified that publicly testifying in court is not required to establish a PSG pursuant to Enriquez-Rivas. Counsel, there's some more recent BIA authority that has also indicated that it may not be necessary to testify. They're now using the word cooperate if there's sufficient cooperation. But I don't think that we've really put a lot of, have a lot of case law that really explains, sort of fleshes that out. But certainly the very basic standards for a PSG still apply, right? Cognizability has to be an immutable characteristic, all of the basic elements. So the problem with these claims typically is on one end of the spectrum, if someone has actually And I'll certainly grant you that we've never said you have to have that. And the BIA has more recently said you don't have to have that. But they've said you have to have cooperation. So what are the facts that are most helpful to your client? So I believe you're referring to a matter of HLSA. I am. And that court still relied on the fact that the society, the lack of society-specific evidence was finding that prosecutorial witnesses were socially distinct or particular. A recent Ninth Circuit, and I will go to your question, Your Honor, I promise. But a recent Ninth Circuit decision by this court, it's unpublished, but it's a guide that was, because it was decided after a matter of HLSA, Moncada Castro v. Garland. And in that case, we similarly held that refusing petitioner's asylum claim based on Actually, we similarly held it. That's okay. But we know what the law is, and you've stated it exactly right. I just really need the facts that most strongly indicate that your client's in a position to take advantage of that authority, please. Of course. And so at various points in his testimony, JOA clarifies that he has reported twice before, and on his third attempt to report, he is told that he has been placed on a blacklist. A reasonable inference, based on substantial evidence in the record, indicates that he was placed on this blacklist as a result of having reported twice before. Whose blacklist, and who told him? The cartel's blacklist, Your Honor, and the police informed him that he has been placed on such blacklist on his third attempt to report. Right. So that's the way I understood the record, too, and I don't see anything else in the record. And I'm trying to figure out, it's one thing to say the police are aware of this, but I'm trying to figure out what evidence that we have that we can rely upon for the public generally, the community understanding this to be true. Absolutely, Your Honor. And there are country conditions evidence that establishes that Mexican society recognizes the unique vulnerability of those who report and recognize them as a discreet class of person. And pursuant to Condé Cuivero, society-specific evidence presented in the country conditions report could suffice to establish cognizability. And so we briefed those portions of the country conditions evidence in our opening brief on pages 36 to 37. Thank you. I'm going to cut you off unless there are more questions because I think you wanted to save a couple minutes. That's true, Your Honor. I'd like to say just one thing. Hang on. Oh, yeah. Do you have any additional questions? You wanted to make a closing remark. Yes. Just one thing on the due process claim. The BIA failed to apply the right legal standard in its assessment of the due process claim, and so we believe that that is sufficient to remand on that basis as well. Thank you for that correction. We'll hear from opposing counsel. We'll hear from opposing counsel whenever you're ready. Thank you. May it please the court, Jacqueline Hagner on behalf of the Attorney General. The court should deny the petition for review because substantial evidence supports the agency's determination in this case that petitioner's proposed particular social group lacks social distinction. Further, petitioner has failed to demonstrate eligibility for cap protection, and petitioner's due process claim lacks merit. I'll turn to petitioner's arguments during oral argument here, and I'll begin with social distinction. I would like to be clear that there is no public testimony requirement. This court has not held that brief, and respondent now does not advance that. What is required is a demonstration in the record that Mexican society views petitioner's PSG as socially distinct. Now, what petitioner advances here or points to is essentially two things for social distinction. I'll deal with them in turn. First is the blacklist. The problem with the blacklist is that it requires a link to the terms of his PSG. And so let's be very clear about the terms of the PSG here are individuals who have witnessed the cartel's violent crimes and reported them to law enforcement. Now, in order for the blacklist to even be relevant here, he would have to show that the cartel is aware that he reported to law enforcement, because that's how his PSG is defined. And that's similar to Enriquez-Rivas, right, where the petitioner in that case testified in open court. That was how her PSG was defined. And then she showed that the country conditions evidence protect those who testify against the gang in open court. It was all connected and relevant to each other. We simply don't have that here. Now, petitioner argues that, and we agree that the record states that the law enforcement told petitioner that he is blacklisted. That is what the record states. The record just does not show that that's why he was blacklisted. And in fact, I believe the respondent argues that substantial evidence supports that he was blacklisted because of his prior interactions with the cartel. And furthermore, that seems to be what he advanced to the board on his brief to the board. He said to the board that he was blacklisted because of his prior operations with the cartel. And so for that reason, the board reasoned that he's just simply not linking the blacklist to the terms of his PSG. But even more important than that, even if everything petitioner is saying is true or were accepted by this court in regards to the blacklist, this court has stated in at least a couple cases, one of which is Conte Quevedo, that your presence on your persecutors' enemies list merely just shows individual retaliation. That does not show how Mexican society views your proposed PSG. So for that reason, social distinction is simply not recognized here in the record. I'm not too sure to what extent petitioners continue to advance the unexhausted argument that the country conditions evidence supports his PSG. It simply does not. I think what she's really advancing is where she started and spent the most of her argument was on the Kat claim. I will move on to Kat claim then, Your Honor. And from what I recall from petitioner's argument, the Kat claim, we have here a particularized threat and government acquiescence. Those are the two prongs that the agency said are that that's why Kat fails in this case. In regards to the particularized threat, petitioner's claim is that the agency did not consider the country conditions evidence or the expert testimony. Both are incorrect. The country conditions evidence is actually a very obvious one because the immigration judge cited several pages of the country conditions evidence and explained that for both particularized threat and government acquiescence, why the country conditions evidence just does not support that. The board then cites the IJ's decision on a specific site, the page of the IJ's decision for that finding. And so it's very clear. And this court's case law supports the agency's determination that generalized conditions of crime and violence in Mexico are not particular to petitioner. And same thing with government acquiescence. The IJ cited pages of the record showing that Mexico is at least trying to combat cartels. And that ineffectiveness alone, as this court has said, just does not suffice to show a lack of government acquiescence. As to the expert testimony, the immigration judge very clearly set forth the Mr. Loria's testimony. She did that in several pages. I think it was like two or three pages. There is no mistake that she thoroughly considered his testimony. And the same thing with Dr. Shenover's physical evaluation report. She essentially described his report and how it corroborated Mr. Loria's testimony in court. The board then acknowledges petitioner's argument about the expert testimony, but then goes on to state a very clear recitation of the law, which is that past torture is relevant but not dispositive as to future torture. And that is because the expert testimony in this case, at most, establishes that petitioner was harmed in the past. And I want to be very clear on that. Not necessarily tortured in the sense of a term of art in this argument, because you need government acquiescence for it to be tortured. And the board cited to this court's decision in Barajas for that proposition. And as the board recognized, the plain text of the implementing regulation for cat protection states that the public official must have prior awareness of the activity that constitutes torture prior to such activity. The only evidence that petitioner points to in the record to support that there was any prior awareness was the law enforcement statement, I believe it was the second time he reported, that they're not going to leave you alone. You need to leave. That just does not compel the conclusion that that public official knew that any future harm prior to it occurring would be the volunteer petitioner. I'm sorry, I missed what you just said. It doesn't show acquiescence, is that what you're saying? Because I think I missed... Yep, so it does not show acquiescence because it does not show that he knew prior to the cartel harming petitioner that they were going to harm him. Well, wait a minute. I think opposing counsel said, can I just get your position on this, that they told him, that the police officers told him, you're on their list, right? You're on their black list. And then they're not going to leave you alone. You need to leave. And I think my sense from the argument in my inartful summary is that the police basically shrugged and said, this isn't going to stop. You need to leave. That's not acquiescence because? Because they did not know, because there's no evidence that he knew prior... I think opposing counsel's argument, again, I'm not stating this very... It's been a long week. Perhaps I'm not being very articulate. But in this particular case where the evidence is, and I don't think it's contested to this, that police are telling him, there's the ones telling him, by the way, you're on the black list. So how do we square that with the government's position that the police did not know he could face a risk of future torture? Yeah, and I'm going to try and argue this, or explain it a little differently. So there are three occasions of harm. After the second occasion is when he was told, they're not going to leave you alone. You need to leave. That does not support the conclusion that he knew prior to this third occasion, which I believe happened in 2000. I believe there was a gap. Maybe the problem is you're using a pronoun, and I'm not sure who the he is in your sentence. Are you talking about the petitioner, or are you talking about... Go ahead. Yeah, perhaps that is the issue here. Law enforcement. I'll say police. So when the police officer said, they're not going to leave you alone, that's all the record shows. There's no other record evidence showing that the police officer knew that... So that was in 2002. There's no other record evidence that the police officer knew that in 2006, he would be harmed again. So that's a four-year difference. And I believe that under the standard of review, substantial evidence to show that he had awareness prior to that 2006 incident, that that harm or the activity constituting torture would occur, and thereafter breached his opportunity to intervene and protect the petitioner. There's just no evidence that the police officer knew that that 2006 incident would occur. Sorry, your argument is that... Does the evidence have to show that he knew, or that the agency knew? Your Honor, I believe the evidence would have to show that a public official knew. All right, so that particular policeman didn't have to know, right? And the agency knew from the four years ago. They've known for years. Right, but your Honor, knowledge of prior activity that possibly constituted torture is not the same. That does not show public... So basically, when an individual reports to a public official, I have been tortured in the past, that doesn't show that the government acquiesced in that prior. Really? If they report and the government does nothing and says, we're not going to investigate, just run away, that's not acquiescence? No, your Honor. I'm not under the CAP regulation, implementing CAP protection. I understand why you may find that disturbing, but if you were to... I would say that under the plain language of the rule, there has to be prior awareness before it occurs. And I believe that there is a case law on the circuit explaining that prior knowledge of torture, or activity constituting torture after it occurs, does not show government acquiescence to that prior activity. And I think I need to be a little more clear in how I'm explaining this. So, for instance, in that second incident when he reported, when Petitioner reported to the police officer in that second incident, the police officer did not know that that second incident was going to happen, or at least there's no evidence in the record that he knew it was going to happen. And that's principally Respondent's position before this court, is that the record simply is not developed enough to support the conclusion that a public official in Mexico knew after the 2002 report that the cartel would then harm Petitioner four years later in 2006. The record does not show that evidence. And that is Respondent's position before the court. And just to be clear, the expert testimony in this case is simply not forward-looking. And that's really important here for count protection. So the expert testimony in this case merely describes Petitioner's PTSD, his MDD, his physical harm that he has experienced. It says nothing about what his particularized threat in that country would be. I think that what is helpful here is that, in fact, the Petitioner cites frequently to a case called Cole from this court. And I think that Cole is actually a very good example of expert testimony that is forward-looking. Because in that case, the experts linked the gang tattoos on Petitioner to what will likely happen on the ground if that Petitioner was removed to a country because of the certain treatment of gang tattoos in that country. That's the type of expert testimony that is relevant or forward-looking for count protection. That's simply not what we have in this case. As for Petitioner's due process claim, Petitioner advances an argument that the wrong standard of review was applied in this case. So the agency or the board applied a standard of a fair opportunity to present his claim. And Petitioner states that the actual standard is a reasonable opportunity. That is a distinction without a difference. And more importantly, Petitioner has not shown any prejudice. So he's not pointed to any evidence in the record that the immigration judge would not let him present, and that because he was not able to present that, he was prejudiced by it. More importantly, his hearing was held over two days. He was represented by counsel. He was able to present expert testimony, present evidence in support of his claim, including significant or extensive country conditions evidence. There's simply just no evidence of a due process claim in this case. So I would like to conclude with our standard of review here, which is the evidence must compel a contrary conclusion. I understand here that Petitioner claims to have been significantly harmed in Mexico. And based on the country conditions evidence, it seems to be a situation in Mexico where there's a lot of generalized crime. The problem is he has to show that he's socially distinct from the rest of Mexican society based on his PhD. And the evidence simply just does not compel the conclusion in this case, or he did not meet his burden of proving that. And so this court should deny his asylum withholding claim. Similar with cat protection, the evidence does not compel a contrary conclusion. And so for the foregoing reasons and the reasons the respondents answered in brief, the court should deny the petition for review. Thank you very much. Thank you for your argument. It's very helpful. You have time remaining on the clock. Thank you, Your Honors. I'd like to ask if you would prefer that I start with the cat analysis or PSG, or if you have any preference, just sort of to counter some of the things that my colleague- The argument seems at this point to have centered on the cat claim. Okay. My colleague argues that the country conditions report is not enough to establish a particularized harm. The BIA does not state that. The BIA simply states that the country conditions was provided consideration by the IJ and cites the IJ's decision and then says nothing more. Counsel, could you go to acquiescence, please, and just review? I'd like to hear your version. Opposing counsel has done a really capable job of explaining her view, the government's view, I should say, of the sequence of events, just the bullet points, if you would, about these reports to the police and being told that he was on the blacklist and acquiescence. What's your take on that? Of course. JOA is threatened by the cartel members. He reports that AR 304 to 305, this report, the police don't do anything. That is the testimony. The police don't do anything. Then JOA, by the same four cartel members, is beaten. He reports this to the police a second time at 308 to 313. He is told that there is nothing that they can do, and then he is advised to leave the country because they are not going to leave him alone. Is that the time when he was told by the police that he was on the blacklist? No, Your Honor. Okay. You've now done bullet point two. Yes. What's bullet point three? Bullet point three is that then he is tortured, just as the police had anticipated that he would be, that he would not be left alone, and he indeed was not. He was tortured, brutally beaten, burned, stabbed, shot. He reports this incident to the police at AR 320 to 330, and he is told that he is on the list 334 to 387. He is mentioning that he is on this blacklist. He's been told. You just did the same thing. He, you mean the police, was told. JOA has been told. Yeah, but you need an active actor in that sentence. It's the police telling him, right? Exactly. Okay. So at that meeting, when the police told him he was on the blacklist, did the police advise him to leave the country? Yes, Your Honor. Again. Yes. In addition, not only does this establish acquiescence pursuant to this court's precedent in Diaz-Renoso v. Bar, where the BIA had failed to take into account petitioners having reported twice to the police and the police having done nothing, and that was not considered in the acquiescence assessment. Similarly here, a misstatement of the record pursuant to Diaz-Renoso is grounds for remand. Additionally, this court has found that country conditions evidence could establish acquiescence by itself. The country conditions evidence also established that the Mexican law enforcement is infiltrated by gang cartels, that gang cartels are torturing victims, and then there is also evidence in the record that people who report violent crimes to the police are seen as particularly unique and vulnerable to cartel violence. So that clock is now ticking back up. You're two minutes over, so I'm going to ask you to wrap up, please. Yes, Your Honor. Unless there are other questions. No. Okay. Yeah, I just think acquiescence has been established, not only by the testimony but also by the country conditions. An expert report as to past torture is still highly probative as to future torture and so should have been considered. Thank you both for your really helpful arguments. We appreciate it very much, and thank you for your pro bono service. Thank you. Thank you. We'll go on to the final case on the calendar, which is Gonzalez v. County of Los Angeles, 22-55386.
judges: TASHIMA, CHRISTEN, SUNG